# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| DAWN E. DEBOER LAPOLE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:17-CV-24-PRC |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Dawn E. Deboer Lapole[1] on January 20, 2017, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 19], filed by Plaintiff on June 27, 2017. Plaintiff requests that the August 17, 2016 decision of the Administrative Law Judge denying her claim for disability insurance benefits and supplemental security income be reversed and remanded for further proceedings. On August 7, 2017, the Commissioner filed a response, and Plaintiff filed a reply on August 28, 2017. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

Plaintiff filed applications for disability insurance benefits and supplemental security income on April 25, 2013, and May 25, 2016, respectively, alleging disability since June 15, 2010. The disability insurance benefits claim was denied initially and on reconsideration. Plaintiff filed a written request for hearing, and on June 28, 2016, Administrative Law Judge Matthew Johnson ("ALJ") held a hearing. In attendance at the hearing were Plaintiff, Plaintiff's attorney, and an impartial vocational expert. After the hearing, Plaintiff's supplemental security income claim was

---

[1]This is how Plaintiff's name appears on the Complaint. Elsewhere in the record, Plaintiff's name is sometimes written as "Dawn E. Debore Lapole."

escalated to the hearing level. On August 17, 2016, the ALJ issued a written decision denying benefits, making the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.

2. The claimant has not engaged in substantial gainful activity since June 15, 2010, the alleged onset date.

3. The claimant has the following severe impairments: major depressive disorder, recurrent, severe; and cannabis abuse.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to understand, carry out, remember, and perform simple, routine, and repetitive tasks but not at a production rate pace and that involve only simple, work-related decision [sic] with the ability to adapt only to routine workplace changes. She can occasionally interact with supervisors, coworkers, and the general public.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born [in 1959] and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from June 15, 2010, through the date of this decision.

(AR 20-26).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an

ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable

4

physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [her] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be

based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff argues that the ALJ erred in assessing Plaintiff's subjective complaints and in determining Plaintiff's mental and physical RFC. The Court considers these arguments below.

### A. Subjective Complaints

In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. §§ 404.1529(a); 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See id.* §§ 404.1529(c)(3); 416.929(c)(3). "An ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); *accord* SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017) ("The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence,

and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."). A credibility determination will be overturned only if it is patently wrong. *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

Plaintiff maintains that the ALJ improperly weighed Plaintiff's complaints and the third party report of Ms. Paquita Doyle. The Court will address Ms. Doyle's report first.

Ms. Doyle completed a third party adult function report on September 10, 2014. Ms. Doyle indicated that she is staff and spends almost every day with Plaintiff, who was living in an individual living facility at the time the report was made. The ALJ determined that he "cannot assign [Ms. Doyle's report] more than little weight because it largely echoes the claimant's own representations of her limitations in similar statements and Ms. Doyle remains emotionally invested in the outcome of this claim." (AR 24).

The ALJ did not identify any of the purportedly similar statements. The Court conducted a cursory view of Ms. Doyle's function report and Plaintiff's function report. While some statements are similar, they are not identical. For example, Plaintiff reported going outside one or two times daily, and Ms. Doyle reported Plaintiff going outside "almost everyday," *id.* at 297, 306; Plaintiff reported being able to pay attention for one minute, and Ms. Doyle reported that Plaintiff is able to pay attention for "not very long," *id.* at 299, 308. The Court finds that Ms. Doyle's report corroboates Plaintiff's subjective complaints, and any "similarity" between the reports does not provide a logical reason to discount Ms. Doyle's report.

Next, the ALJ's statement that Ms. Doyle is "emotionally invested" in Plaintiff's claim is not supported by any reasoning or citation to the record. Ms. Doyle's relationship to Plaintiff is described as "staff." *id.* at 303. The ALJ has not created a logical bridge from the evidence to his determination that Ms. Doyle is emotionally invested in Plaintiff's claim. Further, the Seventh

7

Circuit Court of Appeals has held that even a fiancée's third party function report should not be automatically discounted for potential bias. *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013). Here, the relationship between Ms. Doyle and Plaintiff is professional, not personal, and the unsupported decision to discount Ms. Doyle's report due to emotional investment is in error.

The Court now turns to the ALJ's treatment of Plaintiff's allegations of subjective symptoms, which the ALJ found to be not entirely consistent with the evidence of record. In so finding, the ALJ noted that Plaintiff did well when she received treatment. The ALJ states that Plaintiff "obtained relief of her symptoms" after a trip to the emergency room in early 2014. (AR 23). The medical record cited by the ALJ, however, reports that Plaintiff obtained "*some* relief." *Id.* at 452 (emphasis added). The ALJ further noted that, later in 2014, Plaintiff had "improvement," stable behavior, no hallucinations or delusions, and "some anxiousness." *Id.* at 23. The medical record again reveals a different picture than the one painted by the ALJ: "Improvement is noted. [Plaintiff] is *partially improved*. [Plaintiff's] anxiety symptoms continue. The symptoms of this disorder have *increased* in frequency or intensity. Trembling and shaking associated with anxiety has *worsened*."*Id.* at 525 (emphasis added). Further, the record reveals several occasions on which Plaintiff reported that her medications did not help her impairments, *id.* at 48-49, 588, 604, and times when Plaintiff was on medication and still experiencing symptoms, *e.g.*, *id.* at 629 (reporting to doctor for anxiety while on clonazepam for anxiety)).

The ALJ discounted all periods of higher symptoms as being due to medical noncompliance or substance abuse, citing evidence in the record of times Plaintiff tested positive for drugs. The evidence cited in support of medical noncompliance, specifically that Plaintiff ran out of her medications in January 2014, is the April 2010 report of a consultative examination made by Dr.

Joseph Youkhana. This evidence predates the period cited and does not discuss medical noncompliance on the pages cited by the ALJ.

The record shows on several occasions that Plaintiff reported financial difficulty and lack of treatment due to insurance coverage issues. Inability to pay for treatment can be an acceptable reason for non-compliance. SSR 16-3p, at *10. But the ALJ concluded that the Plaintiff's allegations of the severity of her subjective symptoms were undercut by her failure to seek no-cost health care or medication samples. This is problematic. There is nothing in the record indicating that Plaintiff knew about these options or that they would have been available to her. The ALJ should not have discounted Plaintiff's reports of her symptoms on this basis.

Regarding Plaintiff's use of controlled substances, records show that Plaintiff has been prescribed Xanax and clonazepam, both of which are benzodiazepines. Plaintiff testified to having prescriptions for benzodiazepines and amphetamines. (AR 53). Notably, one of the pages cited by the ALJ in support of substance abuse during periods of higher symptoms, exhibit 7F page 26, indicates a positive test result only for benzodiazepines. *Id.* at 468. The ALJ did not explain how this evidence supports an inference of substance abuse and not an inference of medicine compliance.[2] On the date in question, Plaintiff was transferred from the emergency department to a psychiatric facility for inpatient admission for depression and suicidal ideation. She reported that her depression had been worsening over the previous week. If Plaintiff had been complying with her medicine and not abusing drugs during this time period, then it is probative evidence of Plaintiff's mental abilities without substance abuse. Further, after one week of inpatient mental health care, during which Plaintiff was presumably compliant with her medication regimen and not using controlled

---

[2]Plaintiff reported having consumed alcohol that day, but the ALJ identifies no evidence of the quantity consumed or of Plaintiff appearing to be under the influence of alcohol when she reported to the emergency room.

9

substances for which she did not have a prescription, Plaintiff was still complaining of depression, anxiety, and suicidal ideation. *Id.* at 480.

The causal relationship—if any—between Plaintiff's symptoms and drug use is not clear. The ALJ's inferences that the drug use causes increased symptoms could be correct. It is also possible that when Plaintiff's symptoms are at their most extreme Plaintiff turns to controlled substances in attempt to mitigate the symptoms. That is, Plaintiff's mental illness may cause increased substance abuse, and not vice versa. *See Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006). Additionally, if the ALJ is correct on causation, "the fact that substance abuse aggravated [Plaintiff's] mental illness does not prove that the mental illness itself is not disabling." *Id.*; *see also* SSR 13-2p, 2013 WL 621536, *9 (Feb. 20, 2013) ("We do not know of any research data that we can use to predict reliably that any given claimant's co-occurring mental disorder would improve, or the extent to which it would improve, if the claimant were to stop using drugs or alcohol.").

In sweeping fashion, the ALJ found that, but for medical noncompliance and substance abuse, all of Plaintiff's mental impairments would "consistently respond favorably to medication and counseling." (AR 24). The ALJ cited no evidence in support of this statement. The ALJ elsewhere cites portions of the record where Plaintiff had lower or no symptoms, but "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). The ALJ has not provided a sufficient connection between the evidence and his conclusion on this matter.

In June 2014 and again in May 2015, Plaintiff's treating psychiatrist, Dr. Sadek, observed that Plaintiff's emotional disorder interfered with her day-to-day functioning and that Plaintiff required assistance managing her medications. (AR 525, 548). This corroborates Plaintiff's

statement that she sometimes forgets to take her medications and that she sometimes takes a double dose because she forgets that she has already taken her medications. *Id.* at 240. Earlier in the ALJ's decision—outside of the subjective symptom analysis—the ALJ acknowledged Plaintiff's statements that she needs reminders to take her medications. *Id.* at 22. If Plaintiff's lack of compliance with her medications is a result of her mental impairment, then to discount Plaintiff's statement of the severity of her symptoms due to the effects of those symptoms is problematic. *See Kangail*, 454 F.3d at 630 ("[M]ental illness in general . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment.") (citations omitted). The ALJ did not consider the evidence indicating that Plaintiff needs assistance in managing her medications in finding Plaintiff at fault for not being compliant with her medication regimen. The related issue of the ALJ not considering Dr. Sadek's opinion will be addressed later in this opinion.

The ALJ acknowledged Plaintiff's allegations of crying spells, bad thoughts, poor sleep, poor appetite, withdrawal, hallucinations, nervousness, and bad memory. The ALJ also found that the evidence of record shows that Plaintiff has been diagnosed with mental illness. The ALJ failed to discuss whether he accepted or rejected each of Plaintiff's allegations and, to the extent he accepted the allegations, how those symptoms were addressed by limitations in Plaintiff's RFC. *See Briscoe*, 425 F.3d at 352 ("Contrary to SSR 96–8p, however, the ALJ did not explain how he arrived at these [RFC] conclusions; this omission in itself is sufficient to warrant reversal of the ALJ's decision."). There is no explanation given for the specific limitations the ALJ found in Plaintiff's RFC.

Further, despite being the first factor listed for consideration in evaluating symptoms in SSR 16-3p, the ALJ made no mention of Plaintiff's daily activities in his analysis.

When looking at the subjective symptom analysis as a whole, the ALJ improperly discredited one major source of evidence that supports Plaintiff's statements regarding her subjective

11

symptoms—Ms. Doyle's third party report. The ALJ discredited Plaintiff's symptoms as a result of substance abuse and medication noncompliance despite evidence that Plaintiff has prescriptions for some of the substances that she tested positive for and despite Plaintiff continuing to have symptoms one week into an inpatient mental health stay. The ALJ disregarded the fluctuating nature of mental illness and failed to discuss Plaintiff's daily activities. As a whole, the ALJ did not support with evidence his reasons for discounting Ms. Doyle's report and for finding that Plaintiff's mental impairments would "consistently respond favorably to medication and counseling" if Plaintiff were compliant with medications and not abusing controlled substances. The ALJ has not created a logical bridge from the evidence to his conclusions.

### B. Residual Functional Capacity

For both mental and physical impairments, the residual functional capacity ("RFC") is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including

12

pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry*, 580 F.3d at 477; *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

1.  Mental RFC

Plaintiff alleges that the ALJ improperly assessed Plaintiff's mental RFC. In support, Plaintiff presents many of the same arguments addressed above in looking at the ALJ's evaluation of Plaintiff's subjective symptoms. As the Court found above, the ALJ did not support with evidence of record the determination that all of Plaintiff's symptoms would respond favorably to treatment or to what extent Plaintiff would experience relief from these symptoms. The errors in the subjective symptom evaluation transfer to the mental RFC determination.

Further, the ALJ erred in not discussing or assigning any weight to the opinion by Plaintiff's treating psychiatrist, Dr. Hisham Sadek, that, despite medication compliance, Plaintiff continued to exhibit symptoms of an emotional disorder that interfere with day to day functioning and is in need of medication management.

In determining whether a claimant is disabled, the ALJ "will always consider the medical opinions in [the] case record together with the rest of the relevant evidence . . . received." 20 C.F.R. §§ 404.1527(b), 416.927(b). The ALJ evaluates every medical opinion received. 20 C.F.R. §§ 404,1527(c), 416.927(c). This includes the opinions of nonexamining sources such as state agency

medical and psychological consultants as well as outside medical experts consulted by the ALJ. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).

An ALJ must give the opinion of a treating doctor controlling weight if (1) the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques" and (2) it is "not inconsistent" with substantial evidence of record. *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *see also Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). In weighing all opinion evidence, the ALJ considers several factors and "must explain in the decision the weight given" to each opinion. 20 C.F.R. § 416.927(e)(2)(ii), (iii). *Scrogham v. Colvin*, 765 F.3d 685, 697-98 (7th Cir. 2014); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). When a treating physician's opinion is not given controlling weight, the ALJ must nevertheless consider certain factors to determine how much weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability (such as medical signs and laboratory findings), and specialization. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The Commissioner argues that Dr. Sadek did not provide a medical opinion to which the ALJ should have assigned weight. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his/her] symptoms, diagnosis and prognosis, what [he/she] can still do despite impairment(s), and [his/her] physical or mental restrictions." *Id.* §§ 404.1527(a)(1), 416.927(a)(1). The Commissioner argues that this definition is a list of elements required for a statement to be a medical opinion. However, the items enumerated in the "including" phrase indicate types of judgments about the nature and severity of a claimant's impairment that qualify under the definition and do not state a list of elements that must all be met to qualify as a medical opinion. *Shelton v. Colvin*, No. 1:14-cv-1920-SEB-TAB, 2016 WL 1253007, *4 (S.D. Ind. Mar. 31, 2016) (citing *Schmidt v. Colvin*, 545 F. App'x 552, 554-

556 (7th Cir. 2013); *Collins v. Astrue*, 324 F. App'x 516, 520 (7th Cir 2009)). Dr. Sadek's opinion, though short, indicates his judgment about the nature and severity of Plaintiff's major depressive order, including Plaintiff's need for outpatient treatment, her symptoms which affect day to day functioning, and her need for medication management. (*See* AR 525). The statement is a medical opinion under the definition. The ALJ did not address or assign any weight to this opinion. This was in error and mandates remand.

Plaintiff also argues that the ALJ did not consider Plaintiff's episodes of decompensation. The ALJ found at step 3 that Plaintiff did not have episodes of decompensation that were of extended duration. Plaintiff does not challenge this finding but notes that she had episodes of decompensation of shorter duration that should have been considered in determining her RFC. The ALJ recognized that Plaintiff required emergency care and hospitalization on several occasions, but the ALJ determined that "some of these visits were due to noncompliance with her medication regimen" or induced by substance abuse. *Id.* at 24. This discussion is connected to the ALJ's error in determining that Plaintiff's mental impairment would not be disabling if it were not for her use of controlled substances or her failure to comply with her medication. On remand, the ALJ is instructed to consider Plaintiff's shorter episodes of decompensation in determining Plaintiff's RFC.

2. *Physical RFC*

Plaintiff also contends that the ALJ erred in not finding that Plaintiff's degenerative disc disease is a severe impairment and in not considering the limitations imposed by this impairment in finding Plaintiff's RFC. Failure to identify a severe impairment at step 2 is harmless, provided that the ALJ identifies other severe impairments and continues on in the five-step evaluation process. *See Curvin v. Colvin*, 778 F.3d 645, 649-50 (7th Cir. 2015) (quoting *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012)) (noting that "even if there were a mistake at Step 2, it does not

matter" so long as the ALJ proceeds to consider all impairments in determining the RFC). On remand, the ALJ is directed to consider the effects of all impairments, both severe and non-severe, in determining Plaintiff's RFC.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 19], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** the case for further proceedings.

So ORDERED this 14th day of February, 2018.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE PAUL R. CHERRY<br>
UNITED STATES DISTRICT COURT